**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SAFECO INSURANCE
COMPANY OF AMERICA,

      Plaintiff,

      vs.                                                    Civ. No. 19-962 JAP/GBW

Stephen BRINDEIRO,
and Zilda BRINDEIRO,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On October 14, 2019, Plaintiff filed a COMPLAINT FOR DECLARATORY JUDGMENT RELIEF ("Complaint") (Doc. No. 1) seeking a declaratory judgment declaring their rights and obligations under an insurance contract with Defendants Stephen and Zilda Brindeiro. On February 3, 2020, Defendants filed DEFENDANTS STEPHEN BRINDEIRO AND ZILDA BRINDEIRO'S MOTION TO DISMISS OR STAY ("Motion") (Doc. No. 10). Defendants argue that the Court should abstain from deciding this case to allow the New Mexico state court system to properly determine the parties' rights and obligations. Given the presence of a near-identical suit to this case in state court and New Mexico's preference for determining the scope of insurance policy exclusions alongside the underlying action, the Court will stay the case to allow the New Mexico state court to resolve this issue.

### Factual Background

On December 14, 2018, "Abel and Lisa Rodriguez[2] went to bed in their rental home, located on the Property owned by Defendants. During the night, carbon monoxide fumes leaked

---

[2]  The Complaint originally named Todd Lopez, as Personal Representative of the Estate of Lisa Rodriguez and Abel Rodriguez as defendants. On May 5, 2020, Plaintiff voluntarily dismissed Mr. Lopez and Mr. Rodriguez. *See* Doc. No. 29.

into the home, causing fatal injuries to Lisa Rodriguez and serious injury to Abel Rodriguez." Compl. at ¶ 16. Plaintiff had previously issued a Landlord Protection Policy, Number OY7303388 ("Policy") to Defendants "for property located at 704 S. 17th Street in Artesia, New Mexico ("Property"), for the policy period from October 7, 2018 to October 7, 2019." *Id*. at ¶ 13.

On July 31, 2019, Abel Rodriguez and the estate of Lisa Rodriguez filed a complaint for negligence, gross negligence, wrongful death and loss of consortium in the First Judicial District Court, County of Santa Fe, State of New Mexico ("State Court Case"), against Defendants and others. *Id*. at ¶ 12. Defendants "sought a defense under the Policy issued to them by Safeco in the lawsuit filed by [] Lopez and Rodriguez." *Id*. at ¶ 23. Plaintiff asserts that Defendants are not entitled to a defense in the State Court Case or indemnification under the Policy. *Id.* at ¶ 31. Plaintiff contends that carbon monoxide poisoning fall within under the Policy's "'pollutants and contaminants' exclusion" and "the 'expected or intended' act or omission exclusion." *Id*. at ¶¶ 29–30.

On October 14, 2019, Plaintiff filed this Complaint seeking a declaration that it had no duty to defend the State Court Case and no obligation to indemnify Defendants. On January 17, 2020, Defendants, along with Abel Rodriguez and the estate of Lisa Rodriguez, filed a Third Party Complaint against Plaintiff in the State Court Case seeking a declaration that "[Plaintiff] Safeco is obligated to insure, defend, and indemnity [sic] the Brindeiros in this lawsuit." Mot. Exh. 1 at ¶ 16. Defendants seek to dismiss, or at least stay, this federal court case in order to resolve the scope of duties and rights under the Policy in the State Court Case. *See* Mot. at 1.

### Defendants' Motion

Defendants argue that "any determination of whether an exclusionary provision applies (like the pollution exclusion) should be determined in the primary action . . . ." Mot. at 2–3 (citing *Foundation Reserve Ins. Co. v. Mullinex*, 1982-NMSC-038 ¶ 11). Defendants request that the

Court abstain from deciding this case to allow the state court to do so under *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 981 (10th Cir. 1994).

Under the Declaratory Judgment Act, a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A declaration under the Act has the force and effect of a final judgment. *See id*. A district court "is not obliged to entertain every justiciable declaratory claim brought before it." *Mhoon*, 31 F.3d at 982. A district court may decline jurisdiction over a declaratory action, and, on appeal, the court of appeals would review that decision for abuse of discretion. *Id*. at 983.

A district court should assess five factors in deciding whether to exercise jurisdiction in a declaratory judgment case. *Id*. These factors include:

> 1) whether a declaratory action would settle the controversy; 2) whether it would serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; 4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and 5) whether there is an alternative remedy which is better or more effective.

*Id*. In considering these factors, a court should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation . . . ." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Supreme Court noted that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id*. Keeping these principles in mind, the Court will address each *Mhoon* factor in turn to resolve whether it should exercise jurisdiction in this case.

1. *Will a declaratory judgment settle the controversy?*

The parties disagree whether a declaratory judgment will settle this controversy. Defendants allege that if the Court "finds that the Brindeiros are entitled to a defense and indemnity under the Policy, the issue of whether Safeco must indemnify the Brindeiros would then turn on whether the Brindeiros were found liable in the Rodriguez lawsuit – a question not before this Court." Mot. at 5. In their reply brief, Defendants elaborate on this, noting "[f]acts outside of the complaint can trigger a duty to defend." DEFENDANTS STEPHEN BRINDEIRO AND ZILDA BRINDEIRO'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR STAY (DKT. 10) ("Defendants' Reply") (Doc. No. 24) at 5 (citing *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 1990-NMSC-094, ¶ 11, 110 N.M. 741, 744, 799 P.2d 1113, 1116).

Plaintiff argues that the Court can fully resolve the extent of the policy coverage because this case only needs a "comparison of the allegations of the Rodriguez amended complaint with the provisions of the insurance policy to determine what coverage obligations are owed." PLAINTIFF SAFECO INSURANCE COMPANY OF AMERICA'S RESPONSE TO DEFENDANT STEPHEN BRINDEIRO AND DEFENDANT ZILDA BINDEIRO'S MOTION TO DISMISS OR STAY [DOC. 10] ("Plaintiff's Response") (Doc. No. 19) at 9. Plaintiff contends that the determination needed here is one rooted purely in law, and needs little to no factual development. *See id*. Plaintiff also argues that, to the extent facts outside those alleged in the Complaint are relevant, those questions of fact are not shared between this case and the State Court Case and thus should not weigh against federal jurisdiction. *See id.* at 9–10. (citing *Capitol Specialty Ins. Corp. v. Sw. Clubs, Inc.*, No. 12-01299 MCA/LAM, 2014 WL 11515028, at *12 (D.N.M. Mar. 31, 2014)).

Defendants counter that determining the obligations owed under the Policy is not as easy as Plaintiff indicates. Defendants argue that:

4

> [i]f, as the Brindeiros contend, Safeco has a duty to defend and indemnify, then this action cannot settle the controversy or clarify the legal relationship between Safeco and Defendant Todd Lopez (the state court plaintiff), because that controversy, and those legal relationships, turn on the liability determination in the primary state court action, which depends on legal and factual issues not before this Court.

Defs.' Reply at 7.

Under New Mexico law, the duty to defend and the duty to indemnify are not coterminous.

*See Found. Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, ¶ 6, 97 N.M. 618, 619–20, 642 P.2d

604, 605–06. ("This jurisdiction recognizes the distinction between an insurer's duty to defend

under the terms of an insurance policy and the duty to pay under the terms of the same policy.").

The *Mullenix* Court recognized that:

> [i]f the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages. The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage.

*Id.* (internal citations omitted). The Court believes, at this stage of the state court litigation, more

factual development will likely be needed to resolve the issues of coverage. Confronted with a

similar issue and litigation posture, another judge in this district concluded that, without addressing

the merits, "the Court cannot speculate as to the outcome of its inquiry into whether Plaintiff has

a duty to defend." *Nautilus Ins. Co. v. Tierra Blanca Ranch*, No. 14-CV-988 MCA/SMV, 2015

WL 11643517, at *6 (D.N.M. Sept. 29, 2015). The *Nautilus* Judge believed this because:

> [a]t this stage it is just as likely that the Court would find a duty to defend, on at least some claims. This would clarify one aspect of the relations between Plaintiff and the state court defendants, but as Plaintiff recognizes, the duty to indemnify would remain open as the state case proceeds . . . . The Court might also find that there was ambiguity in the underlying complaint requiring factual development in the state court action to determine whether Plaintiff ultimately had a duty to defend.

*Id*. (internal citations omitted). Although the *Nautilus* Judge believed "it could ultimately resolve the controversy and clarify the legal relations between the parties, [the Judge was] not convinced that it would usefully do so at the outset." *Id*. The *Nautilus* Judge therefore did not weigh this factor heavily in favor of federal jurisdiction. *Id*.

Similarly here, the Court may be capable of undergoing the factual and legal inquiry needed to ultimately resolve the issues in the Complaint. It may or may not currently have enough information to resolve the dispute at this stage but, like Plaintiff suggests, the Court can likely eventually collect the information it needs to do so. This factor weighs slightly in favor of exercising federal court jurisdiction.

2.   *Will a declaratory judgment serve a useful purpose in clarifying the legal relations at issue?*

This factor, in essence, requires a court to ask whether a declaratory judgment would add anything to the existing state court litigation. "[T]he inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court." *See United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002). Where a court could decline jurisdiction in favor of a consolidated or more efficient state proceeding, this factor weighs against federal jurisdiction. *See id*. ("By declining jurisdiction, the district court avoided a piecemeal approach to adjudicating the rights . . . [and] acted within its discretion in determining that the [plaintiff's] claims against the named defendants  . . . would be better settled in a unified proceeding."). In *Nautilus*, the Judge noted that where a "state court will examine the complaint and the insurance policy to determine whether the allegations arise from conduct outside of the coverage, it is not necessary for [the federal court] to issue a declaration of rights." *Nautilus*, 2015 WL 11643517, at *4.

Here, the Third Party Complaint in the State Court Case is nearly identical to the Complaint in this federal district court. *See* Mot. at 5. The Third Party Complaint seeks a declaration that "[Plaintiff] Safeco is obligated to insure, defend, and indemnity [sic] the Brindeiros in this lawsuit." Mot. Exh. 1 at ¶ 16. The parties debating declaratory relief in the State Court Case are the same parties in this federal declaratory suit. The state court should be able to resolve the issues before the Court just as well, making a declaratory judgment in this case redundant. There is no "live need" for the coverage issues here to be resolved in a federal court. *See Nautilus*, 2015 WL 11643517, at *4. This factor weighs in favor of declining federal court jurisdiction.

> 3.  *Is the declaratory remedy being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata?*

Defendants argue that Plaintiff "undoubtedly filed this action in federal court because the United States District of New Mexico is perceived to be more friendly to insurers seeking to avoid coverage than a New Mexico state court would be." Mot. at 5–6. Defendants argue that because Plaintiff could have raised their request for a declaratory judgment in state court, which is the preferred venue for New Mexico coverage disputes, there is no explanation for the Complaint other than procedural fencing. Plaintiff counters that the mere filing of a federal declaratory suit should not be a basis for finding it engaged in procedural fencing. *See* Pl.'s Resp. at 10–11.

Procedural fencing "typically involve[s] questionable actions on the part of the party seeking a declaratory judgment[.]" *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 984 (10th Cir. 2012). This can include using a declaratory judgment action "to provide an arena for a race to *res judicata*." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995). In *Runyon*, the plaintiff "filed its federal suit one day before the date [the insured defendant] promised to file his state court contract action against [the plaintiff]." *Id.* "[The plaintiff] knew [the defendant] was going to file the state contract action; [the

plaintiff] knew the date [the defendant] was going to file the action; and [the plaintiff] waited three years before it sought the declaration." *Id*. The suspicious timing of the suit prompted the district court to find that the plaintiff engaged in procedural fencing, with which the Tenth Circuit agreed. *Id*.

The Court does not believe that the Plaintiff is directly engaging in procedural fencing. It is possible that the Plaintiff seeks a more favorable forum, and could very well have filed this suit in federal court for that reason. "There is much courts do not know, particularly courts not involved in the underlying litigation, about the strategy of attorneys and the timing of certain filings . . . ." *Nautilus*, 2015 WL 11643517, at *5. Plaintiff brought this suit "after issuing its reservation of rights letter to the Brindeiros and more than three months after the [underlying] suit was filed." Pl.'s Resp. at 12. Absent more concrete indication that Plaintiff was manipulating the timing of its filing, the Court will not find that Plaintiff engaged in procedural fencing. Accordingly, this factor does not support or weigh against federal court jurisdiction.

> *4.   Would a declaratory judgment increase friction between federal and state courts and improperly encroach upon state jurisdiction?*

Defendants argue that accepting jurisdiction over this case would encroach upon New Mexico's ability to decide its public policy on coverage exceptions. *See* Defs.' Reply at 6. Defendants assert that "[b]ecause the interpretation of the Brindeiros' policy is a matter of New Mexico state law, the New Mexico courts should make the public policy call on whether to . . . [hold] the pollution exclusion should apply only to traditional industrial environmental claims and not claims like those in the [underlying] action." Defs.' Reply at 6. Plaintiff responds that this dispute requires a very straightforward application of the law to the policy language, and that there are no shared factual disputes that could cause friction. Pl.'s Resp. at 14. Plaintiff argues that "the Policy's unambiguous pollutant exclusion, which excludes coverage for bodily injury caused by

carbon monoxide, precludes coverage for the carbon monoxide poisoning the Rodriguez Plaintiffs alleged to have suffered." Pl.'s Resp. at 14. Defendants contend that the analysis is not this simple, and that numerous policy decisions factor into the analysis.

Although the Court is surely capable of resolving this "straightforward" issue, the question to ask is whether it would be appropriate to do so. Defendants claim that New Mexico law is not clear on whether carbon monoxide would count as a pollutant in interpreting the contract. Defs.' Reply at 5. The contract, however, explicitly enumerates carbon monoxide as a pollutant, rather than requiring any interpretation. Compl. at ¶ 14; *but see Allstate Ins. Co. v. Wallace*, No. CV 03-645 JH/RHS, 2004 WL 7337496, at *5 (D.N.M. Dec. 22, 2004) (holding that unenumerated "pollutant" coverage exclusion generally did not encompass carbon monoxide). It is unclear how much policy analysis will actually be needed to resolve that issue. This policy dispute is better left for a state court to decide.

From a procedural perspective, the presence of the nearly identical state case gives the Court pause about exercising jurisdiction. In *Nautilus*, the Judge believed that "[t]he fact that the Third Party Complaint is pending in state court also raises concerns about federal interference with the state case and possible friction with the state court." *Nautilus*, 2015 WL 11643517, at *4. Given that the *Nautilus* Judge did not know the status and position of the identical state court proceeding, if the federal court "entered a judgment it could undermine the state court's work on the issue or possibly enter a judgment contrary to the state court's as yet unpublished ruling." *Id*. The *Nautilus* Judge concluded that there was "a high likelihood of interfering in the state case where an identical or nearly identical issue is pending." *Id*. Furthermore, New Mexico has a preference "for having insurance coverage issues resolved by the court hearing the underlying case." *Id*. (citing *Lopez v. New Mexico Pub. Sch. Ins. Auth.*, 1994-NMSC-017, ¶ 11, 117 N.M. 207, 210, 870 P.2d 745, 748; *Mullenix*, 1982-NMSC-038, ¶ 11, 97 N.M. at 620, 642 P.2d at 606).

The same concerns present in *Nautlius* are present here. Though the state court declaratory action was filed after the federal Complaint, each case has the potential to interfere with the other. The federal court is, however, encouraged to not interfere with the state court under these circumstances. *See Brillhart*, 316 U.S. at 495. And staying or dismissing the case would align with the state policy preference to resolve the issue in the court closest to the actual dispute. This factor weighs strongly in favor of declining federal court jurisdiction.

>    *5.   Is there an alternative remedy which is better or more effective?*

Defendants' arguments for the fifth factor closely mirror their arguments for the fourth factor. Defendants contend that "[t]he *Rodriguez* lawsuit also provides a better alternate remedy because that is where facts governing coverage will be developed[,]" "Safeco is a party to the *Rodriguez* lawsuit and will have the opportunity to present its position to the state court[,]" and state adjudication "will relieve the parties of the burden of litigating multiple lawsuits arising from the same facts." Mot. at 10–11. Plaintiff believes that there are no significant remaining factual developments, that "declining jurisdiction in this Court will neither save time nor multiple suits[,]" and "if an insurer has to resort to state court for resolution of coverage issues, then there would be no validity to the federal declaratory judgment action for insurers at all." Pl.'s Resp. at 19–20.

As compared to *Mhoon*, where there was no corollary state suit, resolution in state court provides "a better and more effective resolution of [an] insurance company's obligations." *Nautlius*, 2015 WL 11643517, at *4. "The New Mexico court is in the unique position to apply state law . . . [and] is also informed of and has control over the evolving procedural developments evident in this case such as the joining of parties, the amending of complaints, and the filing of third party actions." *Id.* (citing *Mid–Continent Cas. Co.*, 685 F.3d at 986). And again, deference to the state court hearing the underlying case is the state policy. *See Mullenix*, 1982-NMSC-038, ¶ 11, 97 N.M. at 620, 642 P.2d at 606.

The state court here is better situated to resolve the Third Party Complaint alongside the underlying suit for both procedural and policy reasons. It would be more efficient to have one consistent forum in which to litigate these issues. This factor weighs in favor of declining jurisdiction.

### Priority Jurisdiction

Plaintiff argues that New Mexico's "doctrine of priority jurisdiction would result in the state court recognizing this Court's jurisdiction having priority to its own jurisdiction." Pl.'s Resp. at 3. "Priority jurisdiction is a doctrine 'not well developed in New Mexico.'" *Nautilus*, 2015 WL 11643517, at *6. (quoting *Cruz v. FTS Constr., Inc.*, 2006-NMCA-109, ¶ 11, 140 N.M. 284, 142 P.3d 365). Priority jurisdiction prevents the same lawsuit from being litigated twice, and serves a similar purpose "as res judicata, but operates where there is not a final judgment and instead there is a pending case." *Nautilus*, 2015 WL 11643517, at *6 (quoting *Cruz*, 2006-NMCA-109, ¶ 15). The *Nautilus* Judge recognized that "New Mexico's doctrine of priority jurisdiction [does not] require" a federal court "to retain the [earlier-filed federal] case." *Nautilus*, 2015 WL 11643517, at *7. Instead, because a federal district court under the Declaratory Judgment Act "has discretion to decline to hear Plaintiff's declaratory action . . . [a district court] need not consider whether priority jurisdiction applies." *Id*. Thus, the doctrine of priority jurisdiction does not apply here to compel the Court to retain jurisdiction.

### Conclusion

The *Mhoon* factors weigh in favor of declining jurisdiction. The insurance coverage issues can be just as easily, and more appropriately, resolved in the State Court Case. This comports with New Mexico's policy on resolving these types of disputes.

Instead of outright dismissal, however, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that

the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). The Court will therefore stay this case pending the resolution of the Third Party Complaint in the State Court Case. If the State Court Case fails to adequately resolve the issues presented in the Complaint, the Court can revisit these issues. A stay is the best way to balance the rights of the Plaintiff to a federal forum if one is necessary, while respecting New Mexico's policy preferences and promoting efficient resolution of the State Court Case.

IT IS THEREFORE ORDERED that:

(1) DEFENDANTS STEPHEN BRINDEIRO AND ZILDA BRINDEIRO'S MOTION TO DISMISS OR STAY ("Motion") (Doc. No. 10) is GRANTED;

(2) This case is STAYED pending resolution of the Third Party Complaint against Plaintiff in the State Court Case.

_____
SENIOR UNITED STATES DISTRICT JUDGE